UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 AUG 17 PM 3: 34

CLERK

BY _____
DEPUTY CLERK

1. Carolyn Collins, and          )
2. Howard Collins,               )
                                 )
          Plaintiffs,            )
                                 )
vs.                              )   Case No.: 1:15 - cv - 186
                                 )   CLASS ACTION
1. Southwest Airlines Co.,       )
2. American Airlines Group Inc., )
3. United Continental Holdings, Inc., )
4. Delta Air Lines, Inc.,        )
                                 )
          Defendants.            )

## COMPLAINT

Plaintiffs Carolyn Collins and Howard Collins, (collectively. "Plaintiffs"). individually and on behalf of a Class of all those similarly situated. bring this action under the antitrust laws of the United States for treble damages. injunctive relief, costs of suit, and other relief as may be determined as just and proper. against the Defendants named herein.  This action arises from Defendants' conspiracy to fix, raise, maintain, or stabilize prices of airline tickets through a number of means, including colluding to limit seat capacity and signaling other airlines on how quickly they would add new flights, routes, and extra seats in order to limit the capacity of passenger airline travel in the United States. Based upon personal knowledge. the investigation of counsel and upon information and belief, Plaintiffs allege as follows:

### THE PARTIES

1.      Plaintiff Carolyn Collins is an individual who resides in Orleans County. State of Vermont, who directly purchased a ticket for domestic air travel with United Airlines May 26. 2013 for travel from Burlington Vermont on September 23. 2013 and returned on October 4. 2013. Plaintiff suffered antitrust injury as a result of the violations alleged in this Complaint.

2.    Plaintiff Howard Collins is an individual who resides in Orleans County, State of Vermont, who directly purchased a ticket for domestic air travel with United Airlines May 26, 2013 for travel from Burlington Vermont on September 23, 2013 and returned on October 4, 2013. Plaintiff suffered antitrust injury as a result of the violations alleged in this Complaint.

3.    Defendant Southwest Airlines Co. ("Southwest") is a Texas corporation with it principal place of business located in Dallas, Texas. Southwest carries the most domestic passengers of any U.S. airline and operates more than 3,600 flights per day to 94 locations in the United States. Southwest, either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint, including by restricting capacity and agreeing to fix domestic airfare at artificially inflated levels.

4.    Defendant United Continental Holdings, Inc. is a holding company and parent company of Defendant United Airlines Inc. Both United Continental Holdings, Inc. and United Airlines, Inc. (collectively "United") are Delaware corporations with their principal places of business located in Chicago, Illinois. United, either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint, including by restricting capacity and agreeing to fix domestic airfare at artificially inflated levels.

5.    Defendant Delta Air Lines, Inc. ("Delta") is a Delaware corporation with its principal place of business in Atlanta, Georgia. Delta, either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint, including by restricting capacity and agreeing to fix domestic airfare at artificially inflated levels.

6.    Defendant American Airlines Group Inc. is a holding company and the parent company of Defendant American Airlines, Inc. Both American Airlines Group Inc. and American Airlines, Inc. (collectively, "American") are Delaware corporations with their principal

places of business located in Fort Worth, Texas. American was formed in December 2013 as a result of the merger of AMR Corporation, the previous parent company of American Airlines, and US Airways Group, the previous parent company of US Airways. The new America is the largest airline in the world, operating nearly 6,700 flights per day to 339 locations in 54 countries. American, either directly or through a subsidiary, participated in the conspiracy alleged in this Complaint, including by restricting capacity and agreeing to fix domestic airfare at artificially inflated levels.

## JURISDICTION AND VENUE

7.      Plaintiffs bring this action to obtain injunctive relief and treble damages, as well as reasonable attorneys' fees and costs, arising from Defendants' violations of Section 1 of the Sherman Act (15 U.S.C. § 1).

8.      This Court has subject matter jurisdiction pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) and 28 U.S.C. §§ 1331 and 1337.

9.      Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act (15 U.S.C. §§ 15 and 22) and 28 U.S.C. § 1391(b), (c), and (d) because during the Class Period one or more of the Defendants resided in, transacted business in, were found in, or had agents in this district, and a substantial part of the events giving rise to Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce was carried out in this district.

10.      Defendants are subject to the personal jurisdiction of this Court by virtue of their nationwide contacts and other activities, as well as their contacts with the State of Vermont.

## BACKGROUND

11.      This antitrust class action arises out of a conspiracy among the largest airlines in the United States, who collectively account for over 80% of all domestic travel, to unlawfully

fix, raise, maintain, and/or stabilize the price of domestic airfare in the United States. Plaintiffs bring this action on behalf of themselves and all persons and entities who directly purchased domestic air travel in the United States from the named Defendants, any subsidiaries or affiliates thereof, or any of their co-conspirators.

12.     The U.S. Department of Justice ("DOJ") has initiated an investigation into anticompetitive practices in the domestic airline industry by the four major airlines who are the Defendants in this action--American, Delta, Southwest, and United (collectively, "Defendants"). Specifically, the DOJ is investigating whether Defendants colluded to restrain capacity and drive up the price of domestic airfare.

13.     From January 2010 to January 2014, capacity on domestic flights was virtually flat while the U.S. economy grew about 2.2 percent per year.

14.     From January 2014 to January 2015, however, the airlines expanded by 5.5 percent, topping the economy's 2.4 percent growth for 2014.

15.     As a result of a series of mergers starting in 2008, Defendants now control more than 80 percent of the seats in the domestic travel market. During that period, they have eliminated unprofitable flights, filled a higher percentage of seats on planes and made a very public effort to slow growth in order to command higher airfares.

16.     The average domestic airfare rose 13 percent from 2009 to 2014, when adjusted for inflation, according to the Bureau of Transportation Statistics.

17.     In the past two years, U.S. airlines earned a combined $19.7 billion, and the International Air Transport Association estimates that this will more than double in 2015 to a nearly $30 billion.

18.     With suppression of routes, seats, and information, Defendants can make even

higher profits, because at the same time there has been a massive drop in the price airlines pay for jet fuel, their single highest expense. In April 2015, U.S. airlines paid $1.94 per gallon, down 34 percent from the year before.

19.     In the absence of collusion, cost savings in airfares due to decreased jet fuel costs should occur. Indeed, Senators Schumer and Blumenthal have called for an investigation due to the ticket price increases amidst fuel price decreases.

20.     On June 11, 2015, the New York Times published an article titled "'Discipline' for Airlines, Pain for Fliers," in which one of Defendants' mechanisms for collusion was revealed, i.e., industry conferences.

21.     Defendants reinforced their commitment to the collusion - which they referred to as "discipline" - through industry conferences, including the International Air Transport Association ("IATA") meetings.

22.     Delta Air Lines' President Ed Bastian stated that Delta was "continuing with the discipline that the marketplace is expecting."

23.     Air Canada's CEO Calin Rovinescu stated that "[p]eople were undisciplined in the past, but they will be more disciplined in time."

24.     American Airlines CEO Doug Parker said the airlines had learned their lessons from past price wars and told Reuters "I think everybody in the industry understands that."

25.     Jeff Sismek, the CEO of United, was quoted in January 2015 while announcing a $2 billion profit for United in 2014 that "[w]e will absolutely not lose our capacity discipline. . . . It's very health for us and very healthy for the industry."

26.     "Discipline" has been reported to be the "classic oligopoly-speak for limiting flights and seats, higher prices and fatter profit margins" and "industry jargon for limiting

flights." "When airline industry leaders say they're going to be disciplined, they mean they don't want anyone to expand capacity," said Fiona Scott Morton, professor of economics at Yale and former deputy attorney general in the antitrust division of the Justice Department. "And when there aren't enough seats, airlines raise prices. That's what we've been seeing."

27.    Business Travelers Coalition chairman Kevin Mitchell confirmed on July 2, 2015 that "[s]ince recent U.S. airline mega-mergers, we have witnessed near constant airline CEO calls for 'capacity discipline' during industry gatherings and analyst earnings calls only to be echoed by analysts in follow-on earnings calls with other airlines. This represents perhaps the darkest hours of airline coordination as well as a too-cozy harmonization between the airlines and Wall Street."

28.    The New York Times article reported that "after coming under fire" at the International Air Transport Association Annual General Meeting in Miami held June 7-9, 2015, Southwest, which had previously announced it planned to increase its capacity by 8 percent at its hub at Love Field in Dallas, "moved to reassure investors it isn't going rogue." Gary C. Kelly, the CEO of Southwest, stated "[w]e have taken steps this week to begin pulling down our second half 2015 to manage our 2015 capacity growth."

29.    In December 2014, U.S. Senator Charles Schumer (D-N.Y.) called for a federal investigation of U.S. airlines amid falling gas prices.

30.    Senator Schumer stated, "At a time when the cost of fuel is plummeting and profits are rising, it is curious and confounding that ticket prices are sky-high and defying economic gravity....So I'm urging the feds to step in and do a price investigation on behalf of consumers who must buy holiday travel tickets that can break the bank."

31.    In mid-June 2015, U.S. Senator Richard Blumenthal (D-Conn.) asked the

6

Department of Justice to immediately investigate collusion and anti-competitive behavior amongst U.S. airline companies following a meeting of top executives at the IATA annual conference.

32.     In his letter to Assistant Attorney General William Baer, Blumenthal cited the DOJ's investigation into the merger and the Department's initial complaint, which said. "The structure of the airline industry is already conducive to coordinated behavior...the legacy airlines closely watch the pricing moves of their competitors. When one airline 'leads' a price increase, other airlines frequently respond by following with price increases of their own."

## TRADE AND COMMERCE

33.     During the Class Period, each Defendant, or one or more of its subsidiaries, sold tickets for domestic air travel in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

34.     During the Class Period. Defendants collectively controlled a vast majority of the market for domestic air travel in the United States.

35.     The business activities of Defendants substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

36.     To the extent Defendants' conduct alleged herein occurred outside the United States, such conduct involved import trade or import commerce, was directed at customers in the United States, and had a direct, substantial, and reasonably foreseeable effect on import trade or import commerce.

## CLASS ACTION ALLEGATIONS

37.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), on behalf of the following Class:

All persons and entities who purchased a ticket for domestic air travel in the

7

United States directly from one or more Defendants from January 1, 2010 to the present (the "Class Period").

38.     Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

39.     Plaintiffs do not know the exact number of Class Members because such information is in the exclusive control of Defendants. Plaintiffs believe that due to the nature of the trade and commerce involved, there are most likely millions of class members geographically dispersed throughout the United States, such that joinder of all class members is impracticable.

40.     Plaintiffs are members of the Class.   Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs are direct purchasers of domestic air travel in the United States. Plaintiffs and all Class Members were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

41.     Plaintiffs will fairly and adequately protect the interests of the Class.  The interests of the Plaintiffs are coincident with, and not antagonistic to, those of the Class.

42.     Plaintiff is represented by counsel with experience in the prosecution of class action antitrust litigation and other complex litigation.

43.     Numerous questions of law or fact common to the Class arise from Defendants' anticompetitive behavior, including but not limited to:

    a.     whether Defendants combined or conspired to fix, raise, maintain, or stabilize  the price of domestic airfare  in the United States;

    b.     whether Defendants combined or conspired to restrict  the supply of seats

8

sold on domestic flights in the United States;

       c.     whether Defendants shared non-public information, allocated markets and customers, restricted the supply of seats sold on domestic flights in the United States, and committed other conduct in furtherance of the alleged conspiracy;

       d.     whether Defendants' conduct caused the prices of domestic airfare in the United States to be at artificially high and noncompetitive levels;

       e.     whether Plaintiffs and the other members of the Class were injured by Defendants' conduct, and, if so, the appropriate classwide measure of damages for Class Members; and

       f.     whether Plaintiffs and the other members of the Class are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such injunctive relief.

44.     These and other questions of law and fact are common to the Class, and predominate over any questions affecting only individual Class Members, including legal and factual issues relating to liability and damages.

45.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender. Prosecution as a class action will eliminate the possibility of repetitive litigation. Class treatment will also permit the adjudication of relatively small claims by class members who otherwise could not afford to litigate an antitrust claim such as that asserted herein. There will be no material difficulty in the management of this action as a class action.

46.     The Class is readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

9

47.     The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## CLAIM FOR VIOLATIONS OF 15 U.S.C. § 1

48.     Plaintiffs reallege and incorporate by reference all of the above allegations as if fully set forth herein.

49.     During the Class Period, Defendants entered into a continuing combination or conspiracy to unreasonably restrain trade and commerce in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3) by artificially reducing or eliminating airfare competition in the United States.

50.     In particular, Defendants have agreed, combined, and conspired to raise, fix, maintain, or stabilize the prices of airfares in the United States.

51.     As a result of Defendants' unlawful conduct, the airfares were raised, fixed, maintained and stabilized in the United States.

52.     Defendants' combination or conspiracy consisted of a continuing agreement, understanding, and concerted action among Defendants.

53.     Defendants' conspiracy had the effect of artificially inflating the airfares charged in the United States.

54.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class paid more for airfares than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment on their behalf and on behalf of the Class herein, adjudging and decreeing that:

A.     This action may proceed as a class action, with Plaintiffs as the designated Class representatives and their counsel as Class Counsel;

B.     Defendants have engaged in a combination and conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and Plaintiffs and the members of the Class have been injured in their business and property as a result of Defendants' violations;

C.     Plaintiffs and the members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that judgment in favor of Plaintiffs and the Class be entered against Defendants, jointly and severally, in an amount to be trebled in accordance with such laws;

D.     Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf shall be permanently enjoined and restrained from continuing and maintaining the conspiracy or agreement alleged herein;

E.     Plaintiffs and the members of the Class shall be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial Complaint in this action;

F.     Plaintiffs and the members of the Class shall recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

G.     Plaintiffs and the members of the Class shall receive such other or further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

11

Dated : August 10, 2015

Respectfully submitted,

Wilfred K. Wright Jr. VT Bar #5228
**WRIGHT LAW PLC**
P.O. BOX 982
Claremore Oklahoma 74018
(918) 341-1923 tele/facsimile

Allan Kanner, Esq.
Cynthia St. Amant Esq.
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
(504) 524-5777
(504) 524-5763 - Facsimile

*Attorneys for Plaintiffs*